851 A.2d 538

Steven Howard OKEN

v.

STATE of Maryland.

No. 143, Sept. Term, 2003.
Misc. No. 31, Sept. Term, 2003.

Court of Appeals of Maryland.

June 9, 2004.

Fred Warren Bennett (Michael E. Lawlor, Bennett and Lawlor, LLP, Greenbelt, on brief), for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Scott S. Oakley, Asst. Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

## ORDER

PER CURIAM.

The Court has considered the Motion for Stay of Warrant of Execution and Supporting Exhibits of petitioner, Steven Howard Oken, petitioner's appeal from the May 24, 2004 Order of the Circuit Court for Baltimore City in Civil Action No. 24–C–004242 granting respondent's motion to transfer action, and petitioner's appeal from the June 2, 2004 Order of the Circuit Court for Baltimore County in Case No. 03–C–04–5732 denying petitioner's Motion for Preliminary Injunction and Motion for Stay of Further Proceedings, and granting respondent's Motion for Summary Judgment, and has heard oral argument thereon.

Having concluded that the Circuit Court for Baltimore City did not abuse its discretion in transferring Civil Action No. 24–C–004242 to Baltimore County, that the method of execu-

tion intended to be implemented by the Division of Correction does not violate the provisions of Maryland Code (1999, 2003 Cum.Supp.) § 3–905 of the Correctional Services Article or constitute a cruel or unusual punishment as argued by petitioner, and that there is no merit in those appeals, it is this 9th day of June, 2004,

ORDERED, by the Court of Appeals of Maryland, that the judgments of the Circuit Court for Baltimore City and the Circuit Court for Baltimore County be, and they are hereby, AFFIRMED; and it is further

ORDERED that the motion for stay filed in this Court is DENIED.

BELL, C.J., Dissents.

Dissenting Opinion by BELL, C.J.

I am not able to read Maryland Code (1999) § 3–905(a) of the Correctional Services Article [1] as being compatible with the method heretofore, or now intended to be, employed in its implementation. On the contrary, there are material and significant inconsistencies. While the statute requires "the continuous intravenous administration of a lethal quantity of an ultrashort-acting barbiturate or other similar drug in combination with a chemical paralytic agent until a licensed physician pronounces death according to accepted standards of medical practice," in practice, "the execution by lethal injection" begins with the administration of "a quantity of sodium pentothal," which, after "the line [is] flushed with normal saline solution," is followed by the administration of "a quantity of pavulon," and after a second flushing of the line with normal saline, the administration of "a quantity of potassium

---

1. Maryland Code (1999) § 3–905(a) of the Correctional Services Article provides:

"(a) The manner of inflicting the punishment of death shall be the continuous intravenous administration of a lethal quantity of an ultrashort-acting barbiturate or other similar drug in combination with a chemical paralytic agent until a licensed physician pronounces death according to accepted standards of medical practice."

chloride." Letter, dated March 8, 1994, from Richard A. Lanham, Sr., then Commissioner of the Maryland Division of Correction, to Joseph F. Vallerio, Jr., Chair, House Judiciary Committee. See also Affidavit of Randall Watson, dated May 26, 2004. "Continuous intravenous administration" of a quick acting barbiturate, "in combination" with a paralytic agent, is, I submit, vastly different from the intravenous administration, successively, of a barbiturate, a paralytic agent and potassium chloride, each discrete administration being separated by a saline flushing of the line.

Section 3–905(a) is clear and unambiguous. It is well settled, "[i]f the statutory language is unambiguous when construed according to its ordinary and everyday meaning, then this Court 'will give effect to the statute as it is written,' " *Melton v. State,* 379 Md. 471, 477, 842 A.2d 743, 746 (2004), quoting, in turn, *Pak v. Hoang,* 378 Md. 315, 323, 835 A.2d 1185, 1189 (2003); *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557, 566 (2003); *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). See also, and most recently, *Stearman v. State Farm Mut. Auto. Ins. Co.,* 381 Md. 436, 448, 849 A.2d 539, 546, 2004 WL 1076620, *20 (2004). Consequently, there simply is no need to search for the legislative intent; it already is clearly stated.[2] In any event, this statute is highly punitive, indeed, given the intended result of its implementation, it could not be more so. As a result, even if it were ambiguous, the rule of lenity would apply, that is, the benefit

---

2. According to the State, Oklahoma and Mississippi implement their lethal injection statutes, which are essentially the same as Maryland's, using the same three drug combination and that a number of other states, i.e. Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Louisiana, Missouri, New Mexico, New York, Ohio, Oregon, South Dakota, Tennessee, and Texas, use the same drugs as are used in Maryland. That other states may use the same combination of drugs, even some states with identical statutes, is not an answer and can not provide solace. However despicable and outrageous the actions being punished, and these certainly were both, no matter the length of time that has elapsed between the conviction and today, and whatever the reason for the delay, the response must be consistent with Maryland law; the question is, does the procedure employed, comply with Maryland law?

of the ambiguity would be required to be given to the defendant. *Melton,* 379 Md. at 488–89, 842 A.2d at 753.

Whatever, therefore, may be the conclusion that one draws, or may be able to draw, with regard to whether the Maryland lethal injection procedure, the procedure actually used in the past and slated to be used in this case, is cruel or unusual punishment, for me, the critical question is whether that procedure comports with, is consistent with, or is the procedure contemplated by, the statute. Because I conclude that it is not and, in fact, is violative of the statute, I dissent.