IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 24, 2008

Charles R. Fulbruge III
Clerk

No. 08-60652

ALAN DALE WALKER; PAUL EVERETT WOODWARD; GERALD JAMES
HOLLAND

Plaintiffs - Appellants

v.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS; LAWRENCE KELLY, Superintendent of the Mississippi
State Penitentiary at Parchman

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before JOLLY, BARKSDALE, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiffs are inmates who have been sentenced to death. At this point they are not challenging that the State can take their lives; they are challenging the method of execution. They contend that Mississippi's lethal injection protocol is unconstitutional under the Eighth Amendment. The district court found that the applicable statute of limitations barred the plaintiffs' § 1983 action and granted summary judgment to the defendants. We reject the plaintiffs' argument that the equitable doctrine of laches applies. Because the

statute of limitations applies, and because the statute was not tolled in this case, we affirm.

I.

Because this appeal comes to us in a circuitous route, we offer a few background facts.

On October 18, 2007, Alan Dale Walker, Paul Everett Woodward, and Gerald James Holland (collectively, the "plaintiffs") filed this 42 U.S.C. § 1983 action in federal district court against the Mississippi Department of Corrections and the Mississippi State Penitentiary, challenging the constitutionality of Mississippi's lethal injection protocol and seeking a preliminary injunction to prevent the State from executing them during the pendency of their action. At that time, Earl Wesley Berry and Dale Leo Bishop, two death-row inmates who have since been executed, were also plaintiffs. Berry's execution date, however, had been set for October 30. The plaintiffs sought additional injunctive relief in the form of an emergency temporary restraining order to prevent the State from executing Berry before the action could be litigated.

The State responded on October 19 with a motion to dismiss Berry from the action. At a hearing on that motion, the State argued that the complaint was dilatory as to Berry because he had waited until just days before his scheduled execution to challenge the State's lethal injection protocol. The State acknowledged, however, that the other plaintiffs' executions were not imminent and told the district court that those plaintiffs were "taking a timely step in those" – a position from which the State apparently has retreated. The district court dismissed Berry from the action, and this court affirmed. Berry v. Epps, 506 F.3d 402 (5th Cir. 2007). The Supreme Court of the United States, after initially staying Berry's execution, denied his petition for certiorari on April 21, 2008. Berry v. Epps, ___ U.S. ___, 128 S.Ct. 2048 (2008).

In the meantime, no progress was made in the remaining plaintiffs' case. The State failed to file either an answer or responsive pleading and the plaintiffs moved for default judgment, which was entered on May 5. The State moved to set aside the default on May 6 and filed an answer on May 8. The plaintiffs opposed setting aside the default and, in a cross-motion, asked that the district court condition relief from default on the State's agreement, inter alia, not to assert time-based defenses. On May 16, the district court set aside the default judgment but denied the plaintiffs' cross-motion. Walker v. Epps, No. 4:07-CV-176, 2008 WL 2095696, at *2 (N.D. Miss. May 16, 2008).

The State moved for summary judgment on May 28 on the sole ground that the applicable statute of limitations barred the plaintiffs' § 1983 action. In their response, the plaintiffs argued that, because they did not seek damages but instead only sought prospective injunctive relief, the equitable doctrine of laches – not a statute of limitations – applied to their action. In the alternative, the plaintiffs argued that even if a statute of limitations applied, it would not bar their action because (1) the statute should be tolled because they did not know that they could bring this action, and thus the action did not accrue, before the Supreme Court issued its opinions in Hill v. McDonough, 547 U.S. 573 (2006), and Baze v. Rees, __ U.S. __, 128 S.Ct. 1520 (2008); (2) the State's fraudulent concealment of its lethal injection protocol tolled the limitations period; (3) the existing protocol constitutes a continuing tort for which the limitations period is reset for each wrongful act; and (4) the State is equitably estopped from asserting a statute of limitations defense.

The district court rejected the plaintiffs' arguments. Walker v. Epps, __ F.Supp. 2d __, No. 4:07-CV-176, 2008 WL 2788074, at *8-13 (N.D. Miss. July 15, 2008). First, the district court concluded that Mississippi's general statute of limitations, which requires that an action be filed within three years of its accrual, applied to the plaintiffs' § 1983 action notwithstanding the fact that

they sought only prospective injunctive relief. The district court next concluded that each plaintiff's cause of action accrued on the later of two dates: the date direct review of his individual case was complete or the date on which Mississippi's lethal injection statute became effective, August 15, 1998. Because each of the plaintiffs' actions accrued between 1998 and 1999, the three-year limitations period for each expired between 2001 and 2002. Finding that the plaintiffs had failed to file within their respective limitations periods, and rejecting the plaintiffs' arguments that their § 1983 action should survive nonetheless, the district court granted summary judgment for the State on July 15. The plaintiffs promptly appealed.

## II.

We review a grant of summary judgment de novo. See, e.g., Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007). The plaintiffs sought, under § 1983, to enjoin the State from executing them by a method of lethal injection that they allege unnecessarily risks pain and suffering, in violation of the Eighth Amendment. In Hill v. McDonough, 547 U.S. 573 (2006), the Supreme Court of the United States held that an inmate may properly challenge a state's method of execution under § 1983. We must decide here the appropriate means of testing the timeliness of such § 1983 method-of-execution actions, which purport to seek equitable, not legal, relief. We will address two questions that this circuit has not had prior occasion to address: whether a statute of limitations, as opposed to the equitable doctrine of laches, applies to § 1983 method-of-execution claims and, if a statute of limitations applies, at what point the cause of action accrues. We review such questions of law de novo. See Newby v. Enron, ___ F.3d ___, 2008 WL 4113964, at *3 (5th Cir. 2008); Clymore v. United States, 217 F.3d 370, 373 (5th Cir. 2000); In re Hinsley, 201 F.3d 638, 644 (5th Cir. 2000).

## A.

We begin our analysis by reference to Wilson v. Garcia, 471 U.S. 261 (1985). There the Supreme Court held that § 1983 actions are best characterized as personal injury actions and, as such, should be subject to state statutes of limitations for general personal injury actions. Id. at 279. Wilson recognized that applying various limitations periods to separate § 1983 actions had been problematic. The court explained that "practical considerations" supported a "simple, broad characterization of all § 1983 claims":

> The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983.

Id. at 272.

To avoid such "useless litigation on collateral matters," the Supreme Court directed courts of each state to select:

> the one most appropriate statute of limitations for all § 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach.

Id. at 275.

The question for us is whether the broad and inclusive language of Wilson directs that we apply a statute of limitations to the plaintiffs' arguably unusual § 1983 case. The plaintiffs contend that their § 1983 action is not a typical tort action, but instead a suit in equity; consequently it is not subject to the statute of limitations that would otherwise apply in the usual § 1983 case. They distinguish their action by pointing out that unlike typical § 1983 cases, they seek no monetary damages. Because they seek only prospective injunctive relief,

they argue that this court should revert to the traditional manner of judging the timeliness of equitable claims – that is, the doctrine of equitable laches.

In support of their argument, the plaintiffs direct our attention to Holmberg v. Armbrecht, 327 U.S. 392 (1946), in which the Supreme Court held that in suits seeking solely equitable relief, statutes of limitations do not apply. Id. at 396. In Holmberg, creditors sought to hold shareholders of a debtor bank liable under federal law for the bank's debts. The Supreme Court concluded the suit was one in equity and "[t]raditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief." Id. at 396. The plaintiffs also point to precedent in this circuit that stands for the proposition that wholly equitable actions are subject to the doctrine of laches, not statutes of limitations. Envtl. Def. Fund, Inc. v. Alexander, 614 F.2d 474, 478 (5th Cir. 1980) ("when an equitable remedy was sought, the statute of limitations that ordinarily would apply to a legal right was inapplicable"); Perry v. Allen, 239 F.2d 107, 114 (5th Cir. 1956) (applying Holmberg). On the basis of these cases, which did not arise under § 1983, the plaintiffs urge us to find that the equitable doctrine of laches applies to all method-of-execution actions and, as applied, permits the plaintiffs' action here.

In short, the plaintiffs characterize their case as equitable in nature, and contend that statutes of limitation do not generally apply in equity. But although the plaintiffs ably argue their case is one in equity and should be treated differently, we hold that Wilson commands otherwise.

The Supreme Court was fully aware when it decided Wilson that actions seeking equitable relief only could be brought under § 1983. See, e.g., Marsh v. Chambers, 463 U.S. 783 (1983) (§ 1983 action to enjoin Nebraska Legislature from opening its sessions with prayer); Sup. Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719 (1980) (§ 1983 action to declare state disciplinary rules governing conduct of attorneys unconstitutional and to enjoin state from

enforcing rules); Rizzo v. Goode, 423 U.S. 362 (1976) (class action under § 1983 seeking sweeping equitable relief from municipality's alleged unconstitutional practices). If the Supreme Court had intended to exclude such actions from its rule, it would have explicitly stated so in Wilson. It is plain, however, that the Court, in directing courts in each state to select "the one most appropriate statute of limitations for all § 1983 claims," made no exception in Wilson for § 1983 actions that seek only equitable relief. 471 U.S. at 275 (emphasis added). Indeed, the Court was seeking to avoid the precise dispute we face here: The Court observed that if the statute depended on the particular facts or legal theory, "counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim." Id. at 274-75. In the same vein, Wilson stressed that resolving the question of whether an action had been timely filed should be "an uncomplicated task for judges, lawyers, and litigants, rather than a source of uncertainty, and unproductive and ever-increasing litigation." Id. at 275. Wilson's strongly expressed interests in judicial economy suggest to us a finding of no exception for actions seeking equitable relief.

In the light of such unambiguous language and the policy reasons asserted, we read Wilson to compel the conclusion that an applicable statute of limitations applies with equal force to method-of-execution actions, notwithstanding the kind of relief they request.

B.

Our holding is not inconsistent with prior cases addressing emergency motions for stays of execution. The plaintiffs point out, and we acknowledge, that in prior cases we have referred to the equitable doctrine of laches to determine whether a stay should be granted pending review of a § 1983 method-of-execution action. See Neville v. Johnson, 440 F.3d 221 (5th Cir. 2006) (seeking last-minute stay of execution); Harris v. Johnson, 376 F.3d 414 (5th Cir. 2004)

(seeking last minute injunction). In those cases, however, this court did not reach the issue of eligibility for § 1983 relief, because the plaintiff inmates in both cases were seeking temporary stays of execution to permit examination of the merits of their § 1983 case. Neville, 440 F.3d at 223 (action filed two days before scheduled execution was dilatory); Harris, 376 F. 3d at 417 ("We do not decide whether [White] properly states a claim under § 1983, because even if he does, he is not entitled to the equitable relief he seeks" due to his dilatory filing.). Such eleventh-hour filings are naturally suspect. Nelson v. Campbell, 541 U.S. 637, 650 (2004) ("[T]here is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."); Scripps-Howard Radio v. F.C.C., 316 U.S. 4, 10-11 (1942) (citations omitted) ("'A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case.'"). That this court spoke of principles of equity to the requests for stays in those specific cases does not preclude our following the unequivocal teaching of Wilson that statutes of limitations apply generally to the merits of the underlying § 1983 method-of-execution actions.

The plaintiffs continue their argument by citing White v. Johnson, 429 F.3d 572 (5th Cir. 2005), for the proposition that an inmate may challenge a state's method of execution at any time after his conviction and sentence become final on direct review. In fact we did state that White's action would have been appropriately filed after his conviction and sentence became final on direct review. Id. at 573. But that language only acknowledges that it would be inappropriate for an inmate to challenge a state's method of execution before his own death sentence has been affirmed on appeal. It cannot be understood to permit an inmate an unlimited time period in which to file such actions. White

does not address the issue we decide today and the reading of White that the plaintiffs assert does not comply with Wilson's directive to select in each state a statute of limitations for all § 1983 actions.

C.

We are not the first court to address whether a statute of limitations, as opposed to the equitable doctrine of laches, applies to § 1983 method-of-execution actions. Indeed two other circuits have already reached the same conclusion we reach today. Both the Sixth and Eleventh Circuits have in the past year addressed the timeliness of § 1983 method-of-execution actions. Cooey v. Strickland, 479 F.3d 412 (6th Cir. 2007), cert. denied, __ U.S. __, 128 S.Ct. 2047 (2008); McNair v. Allen, 515 F.3d 1168 (11th Cir.), cert. denied, Callahan v. Allen, __ U.S. __, 128 S.Ct. 2914 (2008). The panel majorities in both cases cited Wilson for the general rule that § 1983 actions should be in each state subject to the statute of limitations for general personal injury actions. Cooey, 479 F.3d at 416 (citing Wilson, 471 U.S. at 275-76); McNair, 515 F.3d at 1174 (citing Wilson, 471 U.S. at 275-76). Of note, neither case's dissent disputed that a statute of limitations applied. Cooey, 479 F.3d at 419 (Gilman, J., dissenting); McNair, 515 F.3d at 1178 (Wilson, J., dissenting).

There is, however, a district court opinion, Jones v. Allen, 483 F.Supp. 2d 1142 (M.D. Ala. 2007), that takes the plaintiffs' point of view. That case distinguished between what it called a typical § 1983 case and an atypical § 1983 case: the former seeks relief for a tortious act that has already occurred, while the latter seeks relief for a tortious act that will occur in the future. Because the inmate's method-of-execution action was an atypical § 1983 case, and because the allegedly tortious act (execution) had not occurred, the court reasoned the statute of limitations could not have run, much less have barred the action. Id. at 1149-50. Arguably method-of-execution actions are atypical in that they seek only prospective injunctive relief. Nevertheless, actions seeking only prospective

injunctive relief under § 1983 were not unheard of when the Supreme Court in Wilson expressed itself in all-encompassing language. Because they remain § 1983 actions, they are subject to the rules applicable to all § 1983 actions. To adopt the district court's reasoning would require us to create an exception to a clearly-stated, fair, and rational rule for method-of-execution actions, and for non-compelling reasons. We think Wilson unambiguously forecloses such an exception.[1]

In sum, we conclude under Wilson that statutes of limitations apply with equal force to § 1983 method-of-execution actions, notwithstanding the nature of the relief they request.

### III.

Having concluded that statutes of limitation apply to § 1983 method-of-execution actions, we turn our attention to the question of when such causes of action accrue.

We determine the accrual date of a § 1983 action by reference to federal law. Wallace v. Kato, __ U.S. __, 127 S.Ct. 1091, 1095 (2007). Federal law holds generally that an action accrues when a plaintiff has "'a complete and present cause of action,'" or, expressed differently, "when 'the plaintiff can file suit and obtain relief.'" Id. (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (citations omitted)). As we ourselves have stated, the limitations period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient

---

[1] In her dissent to this court's opinion in Walker v. Epps, __ Fed. App'x __, 2008 WL 2796878 (5th Cir. July 21, 2008) (unpublished), which denied Dale Leo Bishop's emergency application for injunction or stay of execution, Judge King cited the district court's opinion in Jones for the proposition that "[r]egardless of the fact that it may be framed as a § 1983 action, Bishop's claim seeks an equitable remedy." Id. at *6 (King, J., dissenting). Nevertheless, Judge King agreed with the majority that it was unwise to decide, in the context of Bishop's application, whether all § 1983 method-of-execution actions should be subject to statutes of limitations. Id. Such a question "is a difficult one that deserves our full and deliberate consideration." Id.

information to know that he has been injured." Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001) (quoting Russell v. Bd. of Trustees, 968 F.2d 489, 493 (5th Cir. 1992), cert. denied, 507 U.S. 914 (1993)).

The district court concluded that such causes of action necessarily accrue on the later of two dates: the date direct review of an individual case is complete or the date on which the challenged protocol was adopted. We agree with the district court.

Although we have not had prior occasion to rule on this issue, our prior cases have presaged the rule we adopt here. In White, we observed that an inmate may challenge a state's method of execution at any time after his conviction and sentence have become final on direct review. 429 F.3d at 574. In Neville v. Johnson, we reiterated that a plaintiff could not wait until days before his scheduled execution to file his action, when he could have filed it immediately after his conviction became final. 440 F.3d at 222-23 (citing White, 429 F.3d at 574). And in Harris v. Johnson, we dismissed an argument that a plaintiff should wait until his habeas relief is denied to challenge a state's method of execution. 376 F.3d 414, 417-18 (5th Cir. 2004). These cases leave little doubt that a § 1983 method-of-execution action is most appropriately filed after a plaintiff's conviction and sentence have become final on direct review. We therefore hold the limitations period begins to accrue on the date direct review of a plaintiff's conviction and sentence is complete. Of course, in the event a state changes its execution protocol after a death-row inmate's conviction has become final, the limitations period will necessarily accrue on the date that protocol change becomes effective.

We are not the first circuit to attach accrual to these events. The Sixth Circuit in Cooey held that the statute of limitations for a method-of-execution challenge accrues at the completion of direct review in the state court or, if the protocol has changed, the date the new protocol was instituted. Cooey, 479 F.3d

11

at 422. The Sixth Circuit specifically rejected the "problematic" arguments that a method-of-execution action accrues at the time of execution or after all state and federal remedies have been exhausted. Id. at 418-19. The Eleventh Circuit in McNair held similarly that a method-of-execution action accrues at the completion of direct review or on the date the challenged protocol became apparent. McNair, 515 F.3d at 1174. Our rule is thus in keeping with precedent in other circuits.

In the light of the rule we adopt, the district court correctly found that the statute of limitations has run for each of the three remaining plaintiffs. Each of the plaintiffs' individual § 1983 actions accrued between 1998 and 1999. Direct review of Alan Dale Walker's conviction and sentence was complete on December 2, 1996. See Walker v. State, 671 So.2d 581 (Miss. 1995), cert. denied, 518 U.S. 1011 (1996). Therefore, his cause of action accrued on August 15, 1998, the date the statute adopting lethal injection in Mississippi became effective. Direct review of Paul Everett Woodward's conviction and sentence was complete on March 29, 1999. See Woodward v. State, 726 So.2d 524 (Miss. 1997), cert. denied, 526 U.S. 1041 (1999). Direct review of Gerald James Holland's conviction and sentence was complete on October 5, 1998. See Holland v. State, 705 So.2d 307 (Miss. 1997), cert. denied, 525 U.S. 829 (1998).[2] We have just concluded that under Wilson statutes of limitation apply to § 1983 method-of-execution actions and, therefore, the plaintiffs' § 1983 actions were subject to the Mississippi statute of limitations for general personal injury actions. James v. Sadler, 909 F.2d 834, 836 (5th Cir. 1990) (Mississippi's residual statute of

---

[2] Direct review of Dale Leo Bishop was complete on October 22, 2002. See Bishop v. State, 812 So.2d 934 (Miss. 2002), cert. denied, 537 U.S. 976 (2002). At the time the district court entered summary judgment, Bishop was still a plaintiff in this action. Subsequently, the State set Bishop's execution date for July 23, 2008. On July 17, Bishop applied for an emergency injunction or stay of execution, pending our consideration of the case now before us. On July 21, this court denied his application. Walker v. Epps, ___ Fed. App'x ___, 2008 WL 2796878 (5th Cir. July 21, 2008) (unpublished).

limitations applies in § 1983 actions). That statute requires plaintiffs to file an action within three years of its date of accrual. MISS. CODE ANN. § 15-1-49. The plaintiffs each had three years to file their action. Thus, Walker's and Holland's limitations periods expired in 2001, and Woodward's limitations period expired in 2002. Their shared § 1983 action, which they did not file until 2007, was and is barred by the statute of limitations.

IV.

This determination does not, however, end our analysis. The plaintiffs ask us to find that even if their action was subject to the statute of limitations, the statute was tolled. Just as we borrow the forum state's statute of limitations for § 1983 purposes, we borrow also the state's tolling principles. Hardin v. Straub, 490 U.S. 536, 538-39 (1989); Rodriguez v. Holmes, 963 F.2d 799, 803 (5th Cir. 1992). The plaintiffs argue here, as they did in the district court, that (1) the statute should be tolled because they did not know that they could bring this action, and thus the action did not accrue, before the Supreme Court issued its opinions in Hill v. McDonough, 547 U.S. 573 (2006), and Baze v. Rees, __ U.S. __, 128 S.Ct. 1520 (2008); (2) the State's fraudulent concealment of its lethal injection protocol tolled the limitations period; (3) existing protocol constitutes a continuing tort for which the limitations period is reset for each wrongful act; and (4) the State is equitably estopped from asserting a statute of limitations defense. We address each of their arguments in turn.

First the plaintiffs argue the statute of limitations should be tolled because they could not have known that they could bring this action, and thus the action could not have accrued, before the Supreme Court decided Hill v. McDonough, 547 U.S. 573 (2006) (inmate may properly challenge a state's method of execution under § 1983). They argue further that they could not have known the constitutional scrutiny to which Mississippi's lethal injection protocol would be subjected before Baze v. Rees, __ U.S. __, 128 S.Ct. 1520 (2008) (plurality

opinion) (protocol that incorporated various safeguards did not present "substantial" or "objectively intolerable" risk of serious harm). We have previously explained, however, that although Hill permitted method-of-execution challenges under § 1983, it did not have the effect of restoring otherwise untimely method-of-execution actions. Reese v. Livingston, 453 F.3d 289, 290-91 (5th Cir. 2006) ("[W]e are not persuaded that Hill has undermined the decisions of this Court insisting upon a timely filing or that until Hill the suit could not have been brought."). Moreover, the fact that the scrutiny to be applied in method-of-execution cases was previously unclear should not have precluded the plaintiffs from filing their actions. As the district court pointed out, as early as 1997 the United States District Court for the Southern District of Mississippi recognized that inmates could challenge Mississippi's lethal injection protocol in a § 1983 suit. Walker v. Epps, __ F.Supp. 2d __, No. 4:07-CV-176, 2008 WL 2788074, at *5 (N.D. Miss. July 15, 2008) (citing Booker v. Murphy, 953 F.Supp. 756 (S.D. Miss. 1997)). Hence, neither Hill nor Baze reset the plaintiffs' limitations period.

The plaintiffs next allege that the State fraudulently concealed its lethal injection protocol and thus they could not have discovered the cause of action within the limitations period. Mississippi law tolls a statute of limitations if the cause of action is fraudulently concealed. MISS. CODE ANN. § 15-1-67. A plaintiff must show, however, that (1) some affirmative act by the defendant was designed to prevent, and did prevent, discovery of the claim and (2) despite the plaintiff's due diligence, he could not have discovered the claim. Andrus v. Ellis, 887 So.2d 175, 181 (Miss. 2004). Here, the plaintiffs allege only that in other cases the State has resisted requests to disclose the protocol. They allege that, when the State did disclose the protocol in a separate case in 2006, the disclosures were inaccurate and inadequate. They further complain that the State did not fully disclose its protocol until it moved for summary judgment in

this case. The district court, however, found no evidence that the State affirmatively acted to conceal its lethal injection protocol. As the district court noted, Mississippi adopted its lethal injection protocol in 1998. MISS. CODE ANN. § 99-19-51. Since then, it has been no secret that Mississippi uses a three-drug combination used in other states. See, e.g., Oken v. State, 851 A.2d 538, 539 n.2 (Md. 2004) (Bell, C.J., dissenting) (acknowledging states' lethal injection protocols). We cannot accept that the State fraudulently concealed the plaintiffs' cause of action, given that the plaintiffs were aware that they were subject to execution by lethal injection from the moment their convictions became final. The plaintiffs could have filed their § 1983 action on the basis of this fact alone, within the limitations period. They did not need the detailed information they allege the State belatedly disclosed to file their action. The plaintiffs have failed to show the State affirmatively acted to conceal their cause of action and, accordingly, the statute was not tolled on the basis of fraudulent concealment.

The plaintiffs next argue that the existing protocol constitutes a continuing tort for which the limitations period resets at each wrongful act. Under Mississippi law, a continuing tort is "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted." Stevens v. Lake, 615 So.2d 1177, 1178 (Miss. 1993). We previously stated that the doctrine does not apply when a plaintiff "simply alleges that 'harm reverberates from one wrongful act or omission.'" Bellum v. PCE Constructors, Inc., 407 F.3d 734, 743 (5th Cir. 2005) (quoting Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 149 (Miss. 1998)). We do not think the doctrine of continuing torts applies here. The plaintiffs are individually subject to execution, and that act will be a single event. The challenged protocol will affect each plaintiff but once. Under these circumstances, the protocol does not constitute a continuing tort.

Finally, the plaintiffs assert that because the State did not timely respond to their complaint, and this somehow resulted in truncating discovery, it should

be equitably estopped from asserting a statute of limitations defense. The plaintiffs' brief devotes hardly more than a couple of sentences to this point and generally we do not pay attention to unargued assertions. In any event, the plaintiffs' suggestion is meritless because, as we have already observed, the plaintiffs were well aware that they were subject to lethal injection from the moment their convictions became final, and could have filed their action on the basis of that fact alone before the statute of limitations had run. Furthermore, they indicate no possibility of evidence that might have been discovered that would have had any effect on the statute of limitations.

In sum, there is no reason to hold that the statute of limitations has been tolled.

V.

We have held that Wilson, which directs that all § 1983 actions should be in each state subject to one statute of limitations, made no exception for § 1983 actions seeking only equitable relief. Therefore, a statute of limitations applies to the plaintiffs' § 1983 method-of-execution action, notwithstanding the nature of the relief they request. We have also held that the statute was not tolled in this case. Because the statute of limitations applies, and because it was not tolled, the judgment of the district court is

AFFIRMED.