*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————————

JASON GETSY,

        *Plaintiff-Appellant,*

    *v.*

TED STRICKLAND, et al.,

        *Defendants-Appellees.*

No. 08-4199

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-01156—Gregory L. Frost, District Judge.

Argued: July 30, 2009

Decided and Filed: August 12, 2009

Before: MERRITT, MOORE, and GILMAN, Circuit Judges.

———————————————

**COUNSEL**

**ARGUED:** David C. Stebbins, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** David C. Stebbins, Allen L. Bohnert, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, Michael J. Benza, THE LAW OFFICE OF MICHAEL J. BENZA, Chagrin Falls, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

    GILMAN, J., delivered the opinion of the court, in which MOORE, J., joined. MOORE, J. (pp. 8-11), delivered a separate concurring opinion. A separate dissenting opinion by Judge MERRITT will be forthcoming.

———————————————

**OPINION**

———————————————

    RONALD LEE GILMAN, Circuit Judge. Jason Getsy was convicted of aggravated murder and sentenced to death in 1996. In 2007, he filed an intervenor complaint in a lawsuit brought under 42 U.S.C. § 1983 by fellow inmate Richard Cooey that challenged

Ohio's lethal-injection protocol. After this court concluded that Cooey's challenge was time barred, *see Cooey v. Strickland,* 479 F.3d 412 (6th Cir. 2007) (*Cooey II*), the district court dismissed Getsy's complaint on the same ground. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.

*Cooey II*'s central holding is that the two-year statute of limitations for a § 1983 lawsuit challenging Ohio's lethal-injection protocol begins to accrue on the latest of the following possible dates: (1) "upon conclusion of direct review in the state court or the expiration of time for seeking such review," or (2) in 2001, when Ohio adopted lethal injection as the sole method of execution. *Cooey II*, 479 F.3d at 422. With reference to the first of the alternative dates, the "conclusion of direct review" occurs when, after the state supreme court has affirmed the defendant's conviction and sentence on direct appeal, the United States Supreme Court denies the inmate's petition for a writ of certiorari. *Id.* (explaining that the conclusion of direct review occurs when the "United States Supreme Court denied direct review").

In this case, after the Supreme Court of Ohio affirmed Getsy's conviction and sentence, the United States Supreme Court denied Getsy's petition for a writ of certiorari in 1999. *Getsy v. Ohio*, 527 U.S. 1042 (1999). This means that, under *Cooey II*, Getsy's two-year statute of limitations began to accrue in 2001, when Ohio adopted lethal injection as its exclusive method of execution. But Getsy's complaint was not filed until May 2007, several years after the two-year time frame had already elapsed. We therefore conclude that Getsy's constitutional challenge to the Ohio's lethal-injection protocol should be dismissed as untimely pursuant to *Cooey II*.

Despite this reasoning, Getsy maintains that *Cooey II* does not bar his claim. He argues that *Cooey II* is distinguishable because (1) *Baze v. Rees*, 128 S. Ct. 1520 (2008), created a new constitutional right that Getsy was previously unable to invoke, (2) Ohio modified its lethal-injection protocol on May 14, 2009, and (3) a panel of this court vacated his death sentence (even though an *en banc* decision of this court later reinstated the sentence). Getsy also argues that *Cooey II* was wrongly decided. We will address each of these points in turn.

**II.**

Getsy first argues that the Supreme Court's decision in *Baze v. Rees*, 128 S. Ct. 1520 (2008), reset the statute-of-limitations period for Getsy because the case purportedly represents the first time that the Supreme Court explicitly recognized the right to challenge lethal-injection protocols under the Eighth Amendment. His basic contention is that *Baze* created a previously unrecognized constitutional right, so that Getsy could not possibly have been on notice to vindicate that right before the decision was issued. *See Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2001) ("In determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.").

Getsy's argument is unpersuasive. *Baze* did not, in our view, create a new Eighth Amendment right. The Supreme Court has long recognized the right to challenge execution methods under the Eighth Amendment. *Gregg v. Georgia*, 428 U.S. 153, 170 (1976) ("In the earliest cases raising Eighth Amendment claims, the Court focused on particular methods of execution to determine whether they were too cruel to pass constitutional muster.") The Supreme Court has also recognized, more than 100 years before *Baze* was decided, that inmates have the right to challenge death-penalty practices that might cause undue suffering. *In re Kemmler*, 136 U.S. 436, 447 (1890) ("Punishments are cruel when they involve torture or a lingering death . . . ."). Because we do not believe that *Baze* created a new constitutional right, Getsy's attempt to avoid the statute of limitations on that basis is without merit.

Nor were constitutional challenges to specific lethal-injection protocols unprecedented before *Baze*. As early as 1997, at least one federal district court recognized the possibility of bringing such a claim. *See Walker v. Epps*, 550 F.3d 407, 416 (5th Cir. 2008) (holding that *Baze* did not reset the date of accrual, in part because "as early as 1997 the United States District Court for the Southern District of Mississippi recognized that inmates could challenge Mississippi's lethal injection protocol in a § 1983 suit"). The notion that, prior to *Baze*, protocol challenges were unavailable as a matter of law is thus demonstrably false.

So if *Baze* did not create a new constitutional right, what precisely did *Baze* accomplish?  The answer, we believe, is that *Baze clarified the standards that should apply to the merits of Eighth Amendment protocol challenges*.  Justice Thomas acknowledged that *Baze* simply created a new "*formulation of the governing standard*" rather than an entirely new right.  *See Baze*, 128 S. Ct. at 1556 (Thomas, J., concurring in the judgment) (emphasis added).

This raises the question of whether *Baze*'s freshly clarified standards trigger a new accrual date.  We do not believe that they do.  As previously noted, "[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that *should have alerted the typical lay person* to protect his or her rights." *Trzebuckowski*, 319 F.3d at 856 (emphasis added).  *Cooey II* held, rightly or wrongly, that the relevant event is the later of either (1) the "conclusion of direct review in the state court or the expiration of time for seeking such review," or (2) the year 2001, when Ohio adopted lethal injection as the sole method of execution.  *Cooey II*, 479 F.3d at 422.  Nothing in *Baze* gives us cause to question *Cooey II*'s determination of when the statute-of-limitations clock begins to tick.

In this case, Getsy's constitutional claim is focused solely on Ohio's particular application of the lethal-injection method of execution.  He contends that someone on the execution team might make a mistake in administering the drug cocktail and that he might suffer a painful death akin to torture as a result.  Because his ability to assert these kinds of challenges was well established long before *Baze*, as conclusively shown by Getsy's intervention in the *Cooey II* case in 2007, we are unpersuaded that *Baze* caused Getsy's deadline to file his § 1983 claim to be reset.

**III.**

Getsy also attempts to distinguish *Cooey II* by asserting that the modifications to Ohio's lethal-injection protocol, which occurred on May 14, 2009, created a new date of accrual.  His basic claim is that the May 14th modifications reset his accrual date because the particular version of the protocol that Ohio adopted on that date was a fact that could not have been discovered through the exercise of due diligence before the time he intervened in Cooey's suit.

But *Cooey II* has already considered and rejected Getsy's position. Like Getsy, Cooey had argued that the accrual date was reset because Ohio had changed its protocol in 2006. Ohio had adopted the following five changes at that time:

> First, officials removed time deadlines that previously dictated executions begin by a certain hour, and be completed within a narrow time frame. Second, prisoners are given more in-depth medical examinations prior to execution. Third, correctional personnel will make every effort to obtain two sites for heparin locks before proceeding to the execution chamber. Fourth, personnel will no longer use "high pressure" saline injections to check the viability of the intravenous lines. Instead, a "low pressure" drip of saline will be used to keep the line open and confirm its ongoing viability. Fifth, correctional personnel will observe each inmate's arms and check for signs of intravenous incontinence while the drugs are being administered to the inmate.

*Cooey II*, 479 F.3d at 424.

Despite these alterations, *Cooey II* declined to reset Cooey's statute-of-limitations deadline, even though the 2006 changes could not have been previously discovered by Cooey through the exercise of due diligence. Cooey's attempt to reset the accrual date based on the above-listed changes was unsuccessful because he failed to make even a prima facie showing that the modifications would increase his suffering. Nor did Cooey attempt to link the five protocol alterations to the expert testimony that already *did* exist in the record regarding alleged problems with the three-drug lethal-injection cocktail. This is all that *Cooey II* meant when the court criticized Cooey's failure to show that the five changes "relate[d] to" Cooey's "core complaints." *Id.*

Turning now to the present case, Getsy points out similar alterations in the protocol. One change is that a member of the "medical team," while witnessed by another medical-team member, will dispose of unused medications. Other modifications include, for example, more training, the supervision of another medical professional in administering the drugs, and a provision that a noninvasive device may be used to locate a vein. Getsy's main concern, however, is that officials are now provided with too much discretion in implementing the lethal injection.

But Getsy has failed to make even a prima facie showing that the May 14, 2009 protocol modifications might create undue suffering. The actual 2007 protocol changes in

fact explicitly state that the Warden may make policy adjustments "to ensure that the completion of the execution is carried out in a humane, dignified and professional manner." Execution Protocol No. 01-COM-11 (May 14, 2009), superseding 01-COM-11 (Oct. 11, 2006). This is hardly a change likely to cause *increased* suffering.

Nor has Getsy attempted to link the May 14, 2009 changes to the evidence previously submitted as part of Cooey's "core complaints." (Getsy's "core complaint," like Cooey's, is that the initial drug of the lethal-injection drug cocktail will insufficiently anaesthetize him, thus subjecting him to extreme pain when the other two drugs are administered.) In short, Getsy has not made a prima facie showing that the May 14, 2009 modifications will likely subject him to extreme pain based on either new evidence or on existing evidence that has already been proffered in support of his "core complaints." We therefore conclude that Getsy has failed to show that the changes of May 14th to Ohio's lethal-injection protocol suffice to reset his claim-filing deadline.

## IV.

Getsy's final argument is based on the fact that a majority of the present panel vacated his death sentence in *Getsy v. Mitchell*, 456 F.3d 575 (6th Cir. 2006) (*Getsy I*). Although that decision was vacated after this court decided to hear Getsy's appeal *en banc*, *see Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007) (*en banc*) (*Getsy II*), he nevertheless maintains that the initial panel's favorable decision reset the date of accrual for statute-of-limitations purposes.

The problem with this argument is that *Cooey II* held that the accrual period begins for plaintiffs like Getsy either "upon conclusion of direct review in the state court" (1999 for Getsy) or in 2001, when Ohio made lethal injection its sole method of execution. In either case, what happened on collateral review was well beyond the two-year statute of limitations and is thus irrelevant to the accrual of Getsy's § 1983 claim. *Cooey II* is therefore not distinguishable on the basis that a panel of this court rendered a favorable decision that was subsequently vacated. In sum, Getsy's case was correctly dismissed as untimely by the district court.

**V.**

Finally, Getsy argues in great detail that *Cooey II* was wrongly decided.  We are frankly inclined to agree.  But our disagreement with *Cooey II* does not empower us to avoid applying that case's holding.  *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (concluding that one panel of this court cannot overrule the holding of a prior panel unless the prior case is superseded by (1) this court sitting *en banc* or (2) a subsequent decision of the Supreme Court).  This panel therefore has no authority to reverse the district court below on the basis that *Cooey II* might have been erroneously decided.

**VI.**

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

_____

**CONCURRENCE**

_____

KAREN NELSON MOORE, Circuit Judge, concurring.  Constrained by the rule announced in *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007) (*Cooey II*), I concur in the majority opinion.  I write separately, however, to highlight my conviction that *Cooey II* was wrongly decided and to urge immediate en banc review of the application of that rule in the present case to ensure that Getsy's potentially valid 42 U.S.C. § 1983 claim is not improperly and unjustly time barred.

In *Cooey II*, the panel's majority held that the statute-of-limitations period for a § 1983 method-of-execution challenge begins to run "upon conclusion of direct review in the state court or the expiration of time for seeking such review," or when Ohio adopted lethal injection as the sole method of execution.  *Cooey II*, 479 F.3d at 422.  The panel's majority also acknowledged that the statute-of-limitations period can be reset when "the lethal injection protocol . . . changes" in a manner that "relates to" the death-sentenced prisoner's "core complaints" regarding the lethal-injection process.  *Id.* at 424.  The panel's majority provided little illustration of this core-complaints exception, other than to conclude that the prisoner in *Cooey II* had failed to meet the threshold.  *Id.* at 424.

For the compelling reasons set forth in Judge Gilman's dissent in *Cooey II*, *id.* at 424-31, I believe the *Cooey II* panel majority clearly erred in establishing the statute-of-limitations period as outlined above.  Undertaking a proper legal analysis, I find convincing Judge Gilman's conclusion that the statute of limitations for bringing a § 1983 method-of-execution challenge starts to run when the prisoner knows or has reason to know of the facts that give rise to the claim and when the prisoner's execution becomes imminent.  *Id.* at 426, 429 (Gilman, J., dissenting); *see also McNair v. Allen*, 515 F.3d 1168, 1178 (11th Cir. 2008) (Wilson, J., dissenting).  A prisoner's execution can become imminent only when he or she has exhausted both state and federal legal challenges to the death sentence, which is a moment that occurs, at the earliest, upon the Supreme Court's denial of the prisoner's first writ of habeas corpus.  *Cooey II*, 479 F.3d at 426.  Indeed, a prisoner's execution may not be imminent until the state sets an execution date following the rejection of the prisoner's

first habeas petition. It is only upon the conclusion of habeas review and when the prisoner knows or has reason to know of the facts that give rise to the method-of-execution challenge that a court may properly establish the accrual date. *Cooey II*'s ill-advised rule unduly entangles a prisoner's challenges to the validity of his or her sentence with the wholly distinct question of whether the method by which he or she will be executed—assuming the Court ultimately denies habeas relief—can withstand constitutional scrutiny. These are distinct legal and factual questions, and, as Judge Gilman articulately stated, requiring simultaneous litigation of such divergent issues will only decrease judicial efficiency and increase injustice. *Id.* at 429.

Furthermore, in addition to setting the accrual date upon the conclusion of habeas review or the subsequent imposition of an execution date, we must be mindful that in many states the lethal-injection protocol is neither a creature of statute nor of administrative rule. As a result, there is very little, if anything, to constrain the protocol's amendment or to require that the administering body provide notice to concerned parties when it changes execution procedures. *See id.* at 426-27 (noting that the Ohio Department of Rehabilitation and Correction "can change the protocol at any time . . . . [, n]o statutory framework determines when or how such changes may occur[, n]or is there a framework governing when, or even if, such changes will be publicized"); *McNair*, 515 F.3d at 1178 ("The protocol is a creature of regulation, not statute, and thus it is subject to change at any time by the Alabama Department of Corrections.").

Given the protocol's potential state of flux, then, it is imperative that the law provide an opportunity for a prisoner to challenge his or her method of execution following any modification in the protocol that may lead to the potential for increased suffering. *Cf. Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) ("Of course, in the event a state changes its execution protocol . . . the limitations period will necessarily accrue on the date that protocol change becomes effective."); *see Baze v. Rees*, 128 S. Ct. 1520, 1531-32 (2008) (plurality) (concluding execution procedures that create "a substantial risk of serious harm" or an "objectively intolerable risk of harm" have the potential to violate the Eighth Amendment). Numerous conceivable protocol changes—for example, a change in the type of drugs that Ohio administers in the current three-drug protocol—would clearly merit resetting the statute of limitations. But I also believe that a less obvious change to the

protocol could require a new accrual date as well if the amended protocol posed a "substantial risk of serious harm." *Baze*, 128 S. Ct. at 1531-32.

Instead of attempting to draw a not-so-bright-line rule related to "core complaints," I believe that a more practical rule can be found in an analogy to pleading standards. If the prisoner is able to make a prima facie showing that a modification to the protocol would cause increased likelihood of suffering, then the claim will accrue on the date the protocol was changed or when the prisoner could reasonably be expected to have notice of such changes. A mere "unadorned" claim that the change would cause an increased likelihood of harm would be insufficient; rather, the prisoner would be required to present "sufficient factual matter" to support the claim of increased harm. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (establishing pleading standards under Federal Rule of Civil Procedure 8). Such a rule would also extend to cases in which the prisoner was able to show a history of problems with the current protocol, regardless of whether there was a recent modification to the protocol at issue. *See, e.g.*, *Cooey II*, 479 F.3d at 423-24 (discussing the case of Joseph Clark where, despite being administered one of the protocol's drugs, Clark remained conscious and "repeatedly advised officials that the process was not working").

Applying this test to Getsy's case, I would find that the statute of limitations did not begin to run on his method-of-execution claim until the date that his execution became imminent; that is, on March 3, 2008, the date that the Supreme Court of the United States denied certiorari in his habeas appeal, *see Getsy v. Mitchell*, 128 S. Ct. 1475 (2008), or, April 8, 2009, the date the Ohio Supreme Court set his execution date. *State v. Getsy*, 903 N.E.2d 1221 (2009). Although the 2009 changes to Ohio's lethal-injection protocol had the potential to reset the statute of limitations and provide a later accrual date, as the majority points out, Getsy "has failed to make even a prima facie showing . . . of increased likelihood of suffering" with regard to those changes.[1] Such a deficiency, however, is of little import

---

[1] The new protocol states, in relevant part, that:

> [t]he Warden shall consider the needs of the condemned inmate, visitors and family members, the execution team, prison staff and others, and may make alterations and adjustments [to the protocol] . . . as necessary to ensure that the completion is carried out in a humane, dignified and professional manner.

In this case, I agree that the 2009 protocol changes were generally favorable to the prisoner and not of the type to create an increased likelihood of serious harm such that the statute of limitations should be reset following their adoption. It is worth cautioning, however, that should the Warden's consideration of the needs of others overwhelm the Warden's consideration of the needs of the condemned inmate and lead to an increased likelihood of serious harm to the condemned, it is possible that "sufficient factual

given the fact that Getsy filed his method-of-execution challenge in May 2007, well before his claim began to accrue for statute-of-limitations purposes. Consequently, under this rule, I would find that Getsy's challenge to his method-of-execution was timely.

I am compelled to point out that the present case is particularly troubling given the relative lack of clarity regarding the constitutionality of Ohio's method of execution. Importantly, the district court in this case has scheduled an evidentiary hearing on whether Ohio's lethal-injection protocol violates the Eighth Amendment to the Constitution under the standard the Supreme Court recently set forth in *Baze v. Rees*, 128 S. Ct. 1520 (2008) (plurality). That hearing is set for October 2009, only two months after Getsy's imminent August 18, 2009 execution date. Given the Supreme Court's recent guidance as to the type of scrutiny that courts should afford execution protocols to ensure their compliance with the Eighth Amendment's prohibition against cruel and unusual punishment, I find it unconscionable that by invoking a statute-of-limitations defense, the State should be able to execute a person by a procedure that a court may ultimately find cannot withstand constitutional scrutiny. Thus, it is with huge reservation and only because I am bound to apply the law of the Circuit that I am constrained to conclude that Getsy's claim is time barred under this court's view of the law in *Cooey II*.

Given the numerous concerns outlined above and contained within Judge Gilman's dissent in *Cooey II*, I believe that we should sua sponte grant en banc review of *Cooey II* by way of its application in Getsy's case.

---

matter" could support a claim that would warrant a reset of the accrual date.