United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-11137

CHARLES E. MINES, JR.,

Petitioner – Appellant,

VERSUS

DOUGLAS DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent – Appellee.

Appeal from the United States District Court
For the Northern District of Texas
03-CV-2044-H

Before BARKSDALE, GARZA, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

Petitioner, Charles E. Mines, Jr., filed a petition for writ

of habeas corpus pursuant to 28 U.S.C. § 2254. Mines is an inmate

in the custody of the Texas Department of Criminal Justice,

Institutional Division of which Respondent is the director.

Mines was convicted of capital murder by a jury and sentenced

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth 5TH CIR. R. 47.5.4.

-1-

to death by lethal injection.[1]  His conviction and sentence were affirmed by the Texas Court of Criminal Appeals.[2]  The United States Supreme Court granted his petition for certiorari and remanded the case to the Court of Criminal Appeals for reconsideration in light of its opinion in Johnson v. Texas, 509 U.S. 350 (1993).[3]  On remand, his conviction and sentence were again affirmed.[4]  Mines's state application for a writ of habeas corpus was denied by the state district court and the Texas Court of Criminal Appeals.[5]

Mines filed his initial § 2254 petition for a writ of habeas on December 21, 2000 and an amended petition on April 20, 2001. Respondent answered on June 18, 2001 and furnished the state records.  In his petition, as amended, Mines raised eleven (11) claims for relief.  Additionally, in his petition, Mines moved for a stay of this federal habeas proceeding alleging that he is currently incompetent to assist his federal habeas counsel in the pursuit of § 2254 relief.  A United States Magistrate Judge filed "Findings, Conclusions, and Recommendations" based on the record

[1]State v. Mines, Cause No. 16,691 (40th J.D.C.Ellis County Tex. June 2, 1989).

[2]Mines v. State, 852 S.W.2d 941 (Tex. Crim. App. 1993).

[3]Mines v. Texas, 510 U.S. 802 (1993).

[4]Mines v. State, 888 S.W.2d 816 (Tex. Crim. App. 1994), cert. denied, 514 U.S. 117 (1995).

[5]Ex parte Mines, 26 S.W.3d 910 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 908 (2001).

without taking additional evidence. The magistrate judge recommended: (1) denial of Mines's motion for a stay of these proceedings because of his incompetence to assist his counsel; (2) dismissal without prejudice of Mines's first ground for relief (Incompetence to be Executed); and (3) denial of his remaining ten grounds for relief.

The district court entered an order adopting all of the findings, conclusions, and recommendations of the magistrate judge and denied Mines's petition for writ of habeas corpus and dismissed the petition with prejudice. Mines filed a notice of appeal. Subsequently, the magistrate judge found and recommended that a Certificate of Appealability ("COA") should be denied for the reasons stated in his "Findings, Conclusions, and Recommendations. . . which were adopted by the District Court. . . ." The district court adopted the magistrate judge's recommendation and entered an order that denied Mines's request for a COA.

In this appeal, Mines continues to urge his motion for a stay of these proceedings on the basis of his incompetence, and he seeks a COA on three of the eleven grounds urged in the district court.[6] For the reasons assigned below, we affirm (on a different basis) the district court's ruling denying the motion to stay; affirm the

---

[6]To the extent that Mines has failed to raise or brief any of the eight other grounds for relief that he raised in his federal habeas petition in this appeal, those grounds are deemed abandoned and considered by this court to be waived on appeal. See Yohey v. Collins, 985 F.2d 222, 224-225 (5th Cir. 1993).

-3-

district court's denial of COA on one ground; and grant COA on the two remaining grounds.

## BACKGROUND

On the afternoon of May 27, 1988, Mines broke into a home occupied by eighty-year old Vivian Moreno and her invalid daughter, Frances. Upon encountering the women, Mines brutally attacked them with a claw hammer. Vivian was killed instantly, but Frances miraculously survived Mines's attack.

Three days later, Mines was apprehended by police. Within hours of his arrest, Mines confessed to the crime and was charged with the capital murder of Vivian and the attempted capital murder of Frances. Mines pleaded not guilty by reason of insanity to both charges, and requested a hearing in state court to determine whether he was competent to stand trial.

In support of his request for a competency hearing, Mines produced the testimony of a psychiatric expert, Dr. Schack, and his medical records. Those records indicated that the State had attempted to civilly commit Mines to the custody of a mental hospital approximately a week prior to Vivian Moreno's murder. Following a five-day observation period, the treating physician at the state mental hospital, Dr. Nguyen, determined that Mines was not mentally ill and concluded that Mines should not be committed to the hospital involuntarily. But Dr. Nguyen concluded that Mines

did have "a mixed personality disorder[7] with paranoia, passive, aggressive, anti-social features." The state trial court granted Mines's request for a competency hearing, and the issue of Mines's competency to stand trial was presented to a jury.

Mines's primary evidence of his incompetency to stand trial was the testimony of Dr. Schack, Mines's medical records, and the State's attempt to civilly commit him to the state mental hospital. Dr. Schack testified that he had difficulty in getting Mines to cooperate during his attempts to interview Mines. Dr. Schack also testified that much of his diagnosis was based on his observation of Mines on several occasions as well as review of Mines's medical records. Dr. Schack conceded that it is not uncommon for criminal defendants to simulate symptoms of a mental disorder in an attempt to avoid liability for their crimes.[8] Despite this concession, however, Dr. Schack unequivocally testified that in his opinion Mines' symptoms of mental illness were genuine and that he was incompetent to stand trial for capital murder.

In rebuttal, the State offered expert testimony of: (1) Dr. Grigson, a forensic psychologist; (2) Dr. Nguyen, who had observed Mines while he was at the state mental hospital; and (3) several of Mines's jailers. The jailers testified that Mines was capable of

---

[7]Dr. Nguyen testified during the competency hearing and at the murder trial that a person with a personality disorder is capable of knowing right from wrong and that a personality disorder is not the same as a mental illness.

[8]See State Rec. Vol. II at pgs. 17, 19, & 28.

having normal conversations and that Mines appeared to be a fairly intelligent self-educated person who seemed to understand that he had certain rights in jail. The jailers also testified that Mines appeared to understand that he was in jail, why he was in jail, and that when Mines wanted to get along with the jailers and inmates, he could. The jailers testified, however, that Mines could become extremely agitated at other times, and consequently, Mines was confined in a cell by himself.

Dr. Grigson testified that Mines refused to talk to him after Grigson advised Mines of his right to refuse the examination; that Mines appeared to understand this right; and that his opinion of Mines's competency to stand trial was based entirely upon Mines's medical records and Grigson's limited observances of Mines before and during the competency hearing.[9] Dr. Grigson testified that he believed that Mines was competent to stand trial and that Mines's seeming irrational behavior was "very deliberate and intentional."[10] Dr. Grigson also mentioned briefly that it was not uncommon for

---

[9]Mines objected to Dr. Grigson's testimony in part, because that testimony was based on Grigson's observations made during the competency hearing. Specifically, Mines challenges the fact that the state trial court judge allowed Grigson to be present during the testimony of the other experts in contravention of the witness sequestration Rule 613 of the Texas Rules of Criminal Procedure. However, the record reveals that not only was Grigson allowed to be present and observe Mines during the competency hearing but also that Mines's own expert, Dr. Schack, was allowed to do the same because Mines continually refused to be examined by either witness. See State Tr., Rec. Vol. II at 5-6.

[10]State Tr., Rec. Vol. II at 68.

criminal defendants to simulate mental illnesses in an attempt to avoid liability for their crimes.

Mines's counsel vigorously cross-examined Dr. Grigson and elicited testimony that the doctor testified so often and effectively for the State in death penalty cases that he was called "Dr. Death" by the media. Dr. Grigson also conceded that he had spent little more than three minutes speaking to Mines and that his practice of using forensic psychology to predict future dangerousness was looked upon with disfavor by the American Psychiatric Association.

Dr. Nguyen, who was called by the state, testified that after observing and interacting with Mines over a five day period, he, and the rest of the treatment staff at the mental hospital, concluded that Mines was not incompetent. Instead, Dr. Nguyen believed that Mines had a mixed personality disorder, and that Mines was capable of understanding his actions. Dr. Nguyen also testified that Mines could be uncooperative at times and that Mines was "selective in choosing who he talked to."[11] On cross-examination, Dr. Nguyen conceded that he had more patients in his care than he would have preferred at the time he first saw Mines, and that it was his decision not to civilly commit Mines.

The jury concluded that Mines was competent to stand trial for the capital murder of Vivian Moreno and the attempted capital

---

[11]State Tr., Rec. Vol. II at 87.

murder of her daughter, Frances.  At Mines's subsequent murder trial, both Mines and the State presented substantially the same expert testimony that was presented during the competency hearing. Though the State also presented evidence relating to the crime scene and the conditions of Vivian and Frances Moreno when they were found, approximately 40 percent of the testimony heard by the jury during the murder trial was the testimony of Drs. Schack, Grigson, and Nguyen.

Ultimately, the trial jury rejected Mines's insanity defense and convicted him of both capital murder and attempted capital murder.  After the jury answered all three of the special issues in the affirmative, the state trial court sentenced Mines to death.

## DISCUSSION

Mines's § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[12]  Under AEDPA, Mines must obtain a COA before he can appeal the district court's denial of habeas relief.[13]

To obtain a COA, Mines must make "a substantial showing of the denial of a constitutional right."[14]  Making such a showing requires

---

[12]See Penry v. Johnson, 532 U.S. 782, 792 (2001).

[13]28 U.S.C. § 2253(c)(1) (2000); Slack v. McDaniel, 529 U.S. 473, 478 (2000); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").

[14]28 U.S.C. § 2253(c)(2) (2000); Miller-El, 537 U.S. at 336; Slack, 529 U.S. at 483.

Mines to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[15]

In <u>Miller-El v. Cockrell</u>, the Supreme Court instructed, as it previously held in <u>Slack v. McDaniel</u>, that we should "limit [our] examination to a threshold inquiry into the underlying merit of [the petitioner's] claims."[16] The Court observed that "a COA ruling is not the occasion for a ruling on the merit of petitioner's claim . . . ."[17] Instead, our COA determination must be based on "an overview of the claims in the habeas petition and a general assessment of their merits."[18] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."[19] We do not have jurisdiction to justify our denial of a COA based on an adjudication of the actual merits of the claims.[20]

Even if we grant Mines's application for COA, Mines is not necessarily entitled to habeas relief. "To prevail on a petition

---

[15]<u>Miller-El</u>, 537 U.S. at 336 (quoting <u>Slack</u>, 529 U.S. at 484).

[16]<u>Miller-El</u>, 537 U.S. at 327.

[17]<u>Id.</u> at 331.

[18]<u>Id.</u> at 336.

[19]<u>Id.</u>

[20]<u>Id.</u>

for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"[21] A state court's decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts."[22] A state court's decision "involves an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[23]

In making the "unreasonable application" inquiry, this court must determine whether the state court's application of clearly established federal law was objectively unreasonable.[24] "We have

_____

[21]Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)), overruled on other grounds, Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004).

[22]Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

[23]Id. at 413.

[24]Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), cert. denied, 537 U.S. 1104 (2003).

no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."[25]

**(1) Stay of Federal Habeas Proceedings**

Mines contends that he is incompetent to assist his counsel in this habeas proceeding, that the Sixth Amendment and 21 U.S.C. § 848(q)(4)(B)[26] guarantee his right to communicate with and assist his counsel effectively in a habeas proceeding, and, therefore, this proceeding must be stayed until he regains the competence to proceed.[27] Neither the Supreme Court nor this court have determined whether such a right exists, whether the right is constitutional or statutory, what standard of review applies, or in what procedural manner such a right would be properly asserted. We assume for the purposes of this appeal that the right to be competent during the

---

[25]Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002)(quoting Neal, 286 F.3d at 236).

[26]21 U.S.C. § 848(q)(4)(B) entitles indigent habeas petitioners facing the death penalty to, *inter alia*, the appointment of "adequate representation," *i.e.* counsel.

[27]Mines requests a COA on the district court's denial of his motion for a stay. However, a COA is not prerequisite to our review of this claim because it does not challenge the district court's decision on the merits of Mines's habeas petition. See Dunn v. Cockrell, 302 F.3d 491, 492 (5th Cir. 2002)(finding that a COA is not required when an appeal does not implicate the merits of a district court's denial of a habeas petition). Furthermore, the federal district court's ruling that denied Mines's motion for a stay of federal habeas proceedings is not a "judgment of a State court" for which Mines is entitled to seek relief via federal habeas review. 28 U.S.C. § 2254(a)(permitting federal courts to entertain applications for a writ of habeas corpus "pursuant to the judgment of a State court").

pendency of habeas proceedings exists, and because statutes are interpreted in a manner so as to avoid substantial constitutional questions,[28] we assume that the right is statutory in nature. We thus must first address the procedural manner in which such a claim might be invoked and the applicable standard of review before deciding whether Mines is entitled to a stay.

We observe that Mines's request for a stay is, at its core, a request for the district court to enjoin Mines's execution indefinitely. This court has jurisdiction to review any decision by the district court to grant, continue, modify, refuse or dissolve an injunction.[29] Further, this court has previously held that a "district court's refusal to grant a stay in a habeas proceeding is reviewed for abuse of discretion."[30]

Here, the district court's ruling adopted, without explanation, the magistrate judge's recommendation to deny Mines's request for a stay. The magistrate judge concluded that Mines's request for a stay was without support by binding authority because the cases upon which Mines had relied only established that mental incompetency was a basis for equitably tolling AEDPA's one-year filing deadline and a that a habeas petitioner had to be competent

---

[28]Edward J. Bartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988).

[29]See 28 U.S.C. § 1292(a)(1).

[30]Brewer v. Johnson, 139 F.3d 491, 493 (5th Cir. 1998)(citing McFarland v. Scott, 512 U.S. 849, 858 (1994)).

to waive his right to proceed in habeas.[31]  In his objection to the magistrate judge's report and recommendations, Mines cited <u>Rohan ex. rel. Gates v. Woodford</u>, 334 F.3d 803 (9th Cir. 2003), in which the Ninth Circuit concluded that a habeas petitioner has a statutory right to be competent during the pendency of federal habeas proceedings.  Because it was undisputed that the petitioner in <u>Rohan</u> was incompetent, the Ninth Circuit stayed the habeas proceedings.[32]  Neither the magistrate judge nor the district court discussed the applicability of <u>Rohan</u> to this case.  As <u>Rohan</u> arguably offers direct support of Mines's request for a stay,[33] a brief discussion of that case is in order.

In <u>Rohan</u>, the Ninth Circuit, operating under the assumption that the habeas petitioner was legally incompetent,[34] concluded that his statutory right to counsel under 21 U.S.C. § 848(q)(4)(B) implied a statutory right to be competent so that the inmate could assist his counsel during the habeas proceedings.[35]  At issue in that case was whether the district court's appointment of a "next friend" was a sufficient substitute for the incompetent habeas

---

[31]<u>See</u> Mag. Report & Rec. at 7 (citing <u>Calderon v. United States Dist. Court</u>, 163 F.3d 530, 531 (9th Cir. 1998) and <u>Mata v. Johnson</u>, 210 F.3d 324, 332 (5th Cir. 2000)).

[32]<u>Rohan</u>, 334 F.3d at 819.

[33]<u>See</u> <u>id.</u> at 812-813.

[34]<u>See</u> <u>id.</u> at 807 & n.2.

[35]<u>See</u> <u>id.</u> 812-813.

-13-

petitioner's implied statutory right to be competent during the federal habeas proceedings, as it appeared that the district court had found that the habeas petitioner was incompetent.[36]

While this court has previously determined that an inmate must be competent to waive his habeas proceedings,[37] we need not decide whether we agree with the Ninth Circuit's recognition of an implied statutory right to be competent during the pendency of habeas proceedings in order to conclude that the district court did not abuse its discretion in denying the stay in this case.  Mines, unlike the habeas petitioner in Rohan, failed to allege facts or present evidence showing that he is incompetent.  As the state pointed out in its response to Mines's habeas petition,

> Mines cites no evidence to show that he is actually mentally incapable of cooperating with federal habeas counsel. . . . At best, Mines's petition presents evidence to support his general allegation that he suffers from bipolar disorder. . . . Specifically, *none* of the medical opinions cited by Mines conclude that he is unable to consult with his lawyers with a reasonable degree of rational understanding.[38]

Additionally, the record reveals that Mines did not request a competency hearing in the district court,[39] and he does not argue

---

[36]See id. at 806-807.

[37]See Mata v. Johnson, 210 F.3d 324, 327-28 (2000)(requiring competency to waive habeas proceedings once initiated).

[38]See State's Response, Rec. Vol. 4 at 1046 (emphasis in original).

[39]Mines's preliminary federal habeas petition argued that he was incompetent to be executed and sought to have the habeas petition

-14-

here that the evidence he presented in district court should have created "a bona fide" doubt as to Mines's competency in order to trigger the court's *sua sponte* inquiry into his competency under the Supreme Court's decision in <u>Drope v. Missouri</u>, 420 U.S. 162, 180-182 (1975).[40] Thus, Mines's claim lacks the foundation presented to the Ninth Circuit in <u>Rohan</u>. The petitioner in <u>Rohan</u>, who had not previously been adjudged competent to stand trial in state court, moved for and received a competency hearing in federal court.[41] During that hearing, the petitioner presented evidence of his incompetency by submitting the opinions of both his own and the

---

held in abeyance pending the court's consideration of the writ. <u>See</u> R. Vol. 1 at 0086. That petition also purported to include "a motion for competency examination and hearing in the convicting court" that was to be "filed simultaneously with this writ." <u>Id.</u> (citing Appendix AA). But Appendix AA does not appear on its face to be a federal motion. In fact, it is clear from the text of the motion and the rest of the preliminary petition that both documents are copies of those originally filed in state court as the bulk of the legal authorities cited therein are those binding in Texas state courts and the motion for a competency hearing is signed and dated nearly three years before Mines filed his federal habeas petition in September of 2000. Mines later amended his federal habeas petition. While Mines's amended petition also requests an "abatement" of the federal habeas proceedings due to Mines's alleged incompetency, it *does not* request a competency hearing in federal court nor does it purport to "simultaneously" file a motion for a competency hearing in federal court. <u>See</u> R. Vol. at 957. Accordingly, we conclude that Mines did not request a competency hearing in federal court.

[40]A motion for a competency hearing is not required in order to trigger a court's duty to inquire into a person's competency. <u>See</u> <u>Lokos v. Capps</u>, 625 F.2d 1258, 1260 (5th Cir. 1980)(citing <u>Pate v. Robinson</u>, 383 U.S. 375, 384 (1966); <u>Drope</u>, 420 U.S. at 176-77).

[41]<u>See</u> <u>Rohan</u>, 334 F.3d at 805.

State's mental health experts.[42] Here, the allegations and evidence offered by Mines do not substantially differ from the allegations and evidence upon which a Texas jury originally found him to be competent to stand trial.

Furthermore, Mines has not argued that the official diagnosis of his mental illness has changed in the interim or that his illness has become more severe. Without alleging facts that "objectively considered, should have reasonably raised a doubt" as to Mines's competency,[43] the district court had no basis upon which to grant Mines's request for a stay of habeas proceedings. Accordingly, we conclude that the district court did not abuse its discretion in denying Mines's request for a stay and affirm the district court's ruling.

**(2) Second State Court Competency Hearing**

Mines seeks COA on his claim that the state trial court's refusal to grant Mines a second competency hearing following certain outbursts during Mines's first competency hearing and during the voir dire of his capital murder trial violated his due process right to a fair trial. This court has previously stated that a trial court has a duty to conduct further inquiry into a criminal defendant's competency when the court receives information that, objectively considered, reasonably raises a doubt about the

_____

[42]Id. at 805–806.

[43]Lokos, 625 F.2d at 1261.

-16-

defendant's competency and alerts it to the possibility that the defendant could not understand the proceedings, appreciate their significance, or rationally aid his attorney in his defense.[44]

As observed by the magistrate judge, Mines's generally uncooperative and irrational behavior supplemented by Mines's medical records was the basis for the pre-trial competency hearing in state court. A jury, after observing this evidence and Mines's outbursts during that hearing, found Mines to be competent to stand trial for capital murder and attempted capital murder.

Mines's COA application alleges essentially the same facts that were fully and fairly presented to the state competency jury. Despite the jury's verdict on this issue after his first competency hearing, Mines argues that he was entitled to a *second* competency hearing. But Mines does not allege that there was any evidence to show a change in his mental state occurred, or that there had been a change in the nature or cause of his generally uncooperative and irrational behavior. Thus, in the two months between his competency hearing and his capital murder trial, there was no evidence that should have reasonably put the state trial court on notice that there was a doubt as to Mines's competency sufficient to justify a second competency inquiry. In fact, the state trial court record reveals that Mines did not interrupt his trial with outbursts once the jury was selected. Accordingly, we conclude

---

[44]Id. at 1258.

that reasonable jurists could not "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[45] Therefore, Mines's COA application on this claim is denied.

## (3) Dr. Grigson's Guilt Phase Testimony

Mines contends that a COA should be granted on whether his Fifth and Fourteenth Amendment rights were violated by Dr. Grigson's testimony regarding Mines's demeanor in invoking his rights and remaining silent when Grigson attempted to evaluate Mines. The district court adopted the magistrate judge's recommendation to deny this claim on the basis of harmless error even though the magistrate judge found that it was a "close call" as to whether the admission of this testimony was contrary to the Supreme Court's teaching in Wainright v. Greenfield, 474 U.S. 284 (1986). In Greenfield, the Supreme Court held that a defendant's invocation of silence may not be used as substantive evidence of his guilt or sanity.[46]

We agree with the magistrate judge that it is a "close call" whether the admission of Dr. Grigson's testimony was a violation of Mines's rights. Accordingly, a COA is warranted because reasonable jurists could debate the district court's resolution of this claim

---

[45]Miller-El, 537 U.S. at 336 (quoting Slack, 529 U.S. at 484).

[46]See 474 U.S. at 293.

on the merits.

**(4)   Texas Special Issues**

Mines seeks a COA on his final claim that the Texas special issues sentencing scheme used by the jury who sentenced him to death precluded the jury from giving effect to his mitigating evidence of mental illness.  Specifically, Mines argues that the special issue interrogatories in the Texas capital sentencing instruction,[47] as applied to his case, precluded effective presentation of mitigating evidence in violation of the mandates of Penry v. Lynaugh, 492 U.S. 302 (1989)("Penry I"), and Penry v. Johnson, 532 U.S. 782 (2001) ("Penry II").  Mines's trial was held during the interval between the Supreme Court's decisions in Penry I and Penry II.

In Penry I, the Supreme Court held that the first two "special issue" interrogatories in the Texas capital sentencing instructions, though facially valid, failed to satisfy the constitutional requirement that a capital defendant be able to present and have the jury give effect to mitigating evidence in

---

[47]The special issues are set out in TEX. CRIM. PROC. CODE art. 37.071. Under the version of the statute in force when Mines was tried, the first special issue addressed whether the defendant had acted "deliberately and with the reasonable expectation that the death of the deceased or another would result."  The second special issue instructed the jury to consider "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." The third special issue, which is not relevant to the Penry I/Penry II analysis, addressed whether the defendant's conduct was a reasonable response to the provocation, if any, of the victim. See TEX. CRIM. PROC. CODE art. 37.071(b)(1)-(3) (Vernon 1987).

certain situations.[48]  After Penry I, Texas trial courts continued to send the same special issue interrogatories to the jury, but added a supplemental instruction to "cure" any possible Penry I defect.  Though the Texas legislature later adjusted the special issues to add a mitigating evidence question,[49] Mines's jury received the same interim supplemental instruction given in Penry's case when Penry's case was retried on remand from the Supreme Court.[50]

In Penry II, the Supreme Court again considered a constitutional challenge by Penry.  It considered the supplemental

---

[48]492 U.S. at 315, 328.

[49]See Robertson, 325 F.3d at 248-49 & n.4 (describing the background of the period between Penry I and Penry II and detailing the new special issues sentencing scheme).

[50]In Penry II, the Supreme Court restated the instruction:

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the state or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character and record or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and therefore, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues.

532 U.S. at 789-90.

instruction given in Penry's retrial, and held that the instruction failed to give Penry's jurors a "vehicle" by which they might give effect to his mitigating evidence.[51] Specifically, the Court held that the supplemental instruction potentially created an unacceptable dilemma for the jurors: Because it instructed the jurors to change one of their truthful "Yes" special issue answers to an untruthful "No" if they felt the defendant did not deserve the death penalty, it left the jurors with the choice of either not giving effect to Penry's proffered mitigation evidence or, alternatively, violating their oaths as jurors.[52]

Mines's claim is that because his jury instructions were virtually identical to the one given in Penry's trial those instructions created the same situation that the Supreme Court in Penry II found constitutionally unacceptable. Moreover, in a supplemental filing to his COA application, Mines argues that both the federal and state courts considering this claim have relied on an analytical model that has been recently invalidated by the Supreme Court thereby creating some doubt as to whether his Penry claim was resolved correctly. We agree for three reasons.

First, this Court previously granted COA on a similar claim using the now invalid "constitutionally relevant" mode of analysis

---

[51]Id. at 787, 798.

[52]Id. at 798-801.

-21-

for a <u>Penry</u> claim.[53]  Second, the issue of whether the Texas special issues sentencing scheme used in this case places a defendant's mitigating evidence of mental illness beyond the effective reach of the sentencing jury is presented in two cases now pending before this court.[54]  Finally, the parties have not had an opportunity to brief the merits of Mines's <u>Penry</u> claim in light of the Supreme Court decision in <u>Tennard v. Dretke</u>.[55]  Accordingly, we conclude that jurists of reason might debate the correctness of the district court's dismissal of this claim on the merits and grant COA.

## CONCLUSION

For these reasons, we conclude that a COA is not required for this court to review and affirm the district court's ruling denying Mines's motion for a stay of his federal habeas proceedings because of mental incompetence.  We conclude that a COA is not warranted on Mines's second claim.  A COA is granted, however, on Mines's third and fourth claims.  Accordingly, the Clerk is ordered to set those two claims for briefing and oral argument according to the usual schedule.

**COA GRANTED IN PART; COA DENIED IN PART.**

---

[53]<u>See</u> <u>Coble v. Cockrell</u>, 80 Fed. Appx. 301 (5th Cir. 2003).

[54]<u>See</u> <u>Bigby v. Cockrell</u>, 340 F.3d 259 (5th Cir. 2003), pet. for r'hg filed August 11, 2003; <u>Coble</u>, 80 Fed. Appx. at 301.

[55]124 S. Ct. 2562 (2004).